RECEIVED
DEC 1 6 2015
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SHAWNTELL MCKAY O/B/O S.D. | CIVIL ACTION NO. 1:15-0508 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| SCHOOL BOARD OF AVOYELLES PARISH | MAG. JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two cross motions for summary judgment: (1) "Motion for Summary Judgment" (R. #10) filed by plaintiff Shawntell McKay on behalf of her minor son, S.D., and (2) "Motion of Defendant Avoyelles Parish School District for Summary Judgment" (R. #12). In both motions, the parties move for summary judgment in their favor; Defendant seeks judgment in its favor as to all claims pursuant to 20 U.S.C. § 1400 <u>et seq.</u>, and plaintiff seeks (1) a reversal of the decision of the Administrative Law Judge ("ALJ"), (2) an order mandating that the Avoyelles Parish School District (the "School District") provide one year of compensatory education to her minor son, S.D., (3) a finding that the School District denied S.D. a free and appropriate public education ("FAPE"), (4) a finding that plaintiff is the prevailing party, and (5) an award of reasonable attorney fees incurred in this matter.

## FACTUAL STATEMENT

During the 2013-2014 school year, S.D., a nine to ten year old student who was diagnosed with Autism, attended the Cottonport Elementary School in Avoyelles Parish, Louisiana. Plaintiff, Shawntell McKay is the biological mother and legal guardian of S.D. S.D. is entitled to receive special education and related services from the School District pursuant to the Individual and

1

Disabilities Education Act ("IDEA"). The School District utilizes Applied Behavior Analysis ("ABA") to work with S.D. in multiple areas.[1]

The School District evaluated S.D. and created an Individualized Education Program ("IEP") on April 26, 2013 and again on December 17, 2013 to address S.D.'s impairments. S.D. exhibits significant expressive and receptive language deficits typical of children with autism that requires technology to supplement his oral communication which includes digital recorders, adapted toys/games, communication board/system, voice output device and visual schedule/pictures.[2] S.D. has significant delays in receptive and expressive language, cognition, social-emotional, adaptive behavior, and motor skills; he is overactive, impulsive, distractible, and has sensory processing issues. S.D. qualifies for occupational therapy ("OT"), speech/language therapy, and adapted physical education ("APE").[3] S.D. is eligible to receive special education and related services from the School District as defined by the IEP which is designed by an IEP Team and implemented by the School District specifically for S.D.[4] The "picture exchange communication system" ("PECS") was utilized as a strategy to assist S.D. due to his communication impairments.[5] PECS is used to help a student make progress towards his IEP goals.[6]

---

[1] S.O.F. 17. R. #14-1.
[2] Adm. R. p. 1664-1668.
[3] Adm. R. p. 1668; Adm R. pp. 215-230; hearing exh. "J-1".
[4] Adm. R. p. 1668.
[5] Adm. R. pp. 1264-1272.
[6] Adm. R. p. 1270.

Both IEPs, dated April 26, 2013 and December 17, 2013 identified multiple educational needs,[7] one of which was toileting and diapering.[8] Consequently, the IEP Team developed an "instructional plan" ("IP") for S.D.'s toileting.[9] The IP revealed S.D.'s present level of function as follows; "[S.D.] is beginning to give cues when his diapers are wet and he needs to be changed. He is now being brought to the restroom to start potty training. He is brought on a schedule in order to maintain a routine each day."[10] The level of function in both IEPs (2013 IEP and 2014 IEP) are identical.[11]

S.D.'s IP states that his "measurable academic/functional goal" is as follows:

> Given cues and a structures [sic] setting with scheduled bathroom breaks [S.D.] will use the restroom with 100% accuracy in 3/5 trials as evidenced by documentation log by the IEP anniversary date.[12]

The measurable academic/functional goal in the 2013 and 2014 IEP are identical.[13] The IP establishes S.D.'s "MEASURABLE SHORT-TERM OBJECTIVES or benchmarks" ("objectives").[14] The IP objectives for the 2013 and 2014 are identical.[15] According to the IP, the special education

---

[7] Other areas included reading, communication, handwriting, social, math and gross motor. Adm R. pp. 129 and 1147.
[8] Adm. R. pp. 134, 151, 305.
[9] Adm. R. 296, 322.
[10] Id.
[11] Compare Adm. R. 322 with Adm. R. 296.
[12] Adm. R. 296.
[13] Compare Adm. R. 322 with Adm. R. 296.
[14] Adm. R. 296, 322.
[15] Compare Adm. R. 322 with Adm. R. 296.

3

teacher, the parent, the student and the paraprofessional are responsible for implementing the stated goals.[16]

Specifically, as to S.D.'s progress with respect to his IEP toileting goal, all 9-week period progress reports indicated that S.D. had made "sufficient progress" in that area.[17] The documentation logs used in measuring S.D.'s progress in the area of toileting for the 2013-2014 school year show a diapering schedule, the date, the time S.D. was changed, the paraprofessional's initial[18], and the state of the diaper as being either wet ("W"), dry ("D"), or bowel movement ("BM").[19] S.D.'s Progress Reports for March 2014 and May 2014 indicate that he made sufficient progress toward his IEP goals in motor-handwriting, communication-language, academic/cognitive-reading, self-help, toileting, social motor-gross and academic/cognitive-math.[20]

Plaintiff alleges that during the 2013-2014 school year, S.D.'s toileting actually worsened. She alleges that on one occasion, S.D. returned home from school with dried feces on the inside of his pants, and on several occasions, he deboarded the school bus with a soiled diaper. Generally, plaintiff complains that the School District employees designated to oversee the implementation of S.D.'s toilet training, had no understanding of the methodology to address S.D.'s toilet training goals and failed to comply with S.D.'s IEP.

---

[16] Adm. R. pp. 296, 322.
[17] Adm. R. pp. 761, 769.
[18] Who changed S.D.'s diaper.
[19] Adm. R. pp. 846-55.
[20] Adm. R. pp. 1668-1669; plaintiff contends that neither the progress reports not any other document gives documented data to back up this data.

4

Consequently, plaintiff filed a due process complaint with the Louisiana Department of Education seeking that "the Hearing Officer [ ] order Petitioner to enter into an education plan with Respondent, requiring compensatory education for one year ...."[21] On October 28, 2014 and October 29, 2014, the parties participated in a due process hearing before Administrative Law Judge ("ALJ") Adaora Chukudebelu. In denying plaintiff's claims, the ALJ found as follows:

> Minor's Special Education Teacher and Minor's Special Education Paraprofessionals 1 and 2 are responsible for implementing Minor's IEP; they rely on the documentation logs to track Minor's progress in toileting. The documentation logs for toileting that were maintained prior to August 11, 2014, contained the date, time, initial of the paraprofessional, and a letter to indicate whether Minor was wet (W), dry (D), or had a bowel movement (BM). These documentation logs did not contain sufficient data that could reasonably be used in measuring Minor's progress towards his short-term objectives or benchmarks. Relying on documentation logs used before August 11, 2014, Supervisor of Special Education for the School Board, Minor's Special Education Teacher, and Minor's Special Education Paraprofessionals 1 and 2 could not adequately explain how he had sufficiently progressed.[22]

The ALJ further concluded that "[t]he School Board's documentation log for toileting did not contain enough information to determine if Minor was meeting his goals."[23] The ALJ also noted that "[o]n August 11, 2014, the School Board instituted new documentation logs with sufficient specificity to track Minor's toileting progress."[24] The ALJ made these further findings:

> Minor demonstrated positive academic benefits. He also demonstrated non-academic benefits in social areas. He did not demonstrate non-academic benefit in the area of toileting. Parent admitted that Minor is making progress in all other areas except toileting. It is not necessary for a student to improve in every area

---

[21] Adm. R. p. 7.
[22] Adm. R. p. 1676.
[23] Adm. R. p. 1682.
[24] Adm. R. p. 1676.

5

> to obtain an educational benefit from his IEP. The IDEA does not entitle Minor to a program that maximizes his potential.[25]

The ALJ ultimately held as follows:

> Because the Supreme Court in *Rowley* only requires districts to ensure that students with disabilities receive some educational benefit, notwithstanding School Board's insufficient documentation of Minor's progress in the area of toileting, the holistic approach of *Rowley* and the accommodations set forth in Minor's IEP allows him to receive a FAPE.[26]

The ALJ applied the two-prong Rowley [27] test to determine if the School District had provided a FAPE under the IDEA. As to plaintiff's allegation that the School District had deprived her as a parent, of a meaningful opportunity to participate in Minor's IEP, the ALJ ruled that plaintiff had failed to prove that the procedural violations (1) impeded S.D.'s right to a FAPE, (2) significantly impeded plaintiff's opportunity to participate in the decision-making process regarding the provision of a FAPE, or (3) caused any deprivation of educational benefit.[28]

The ALJ further found that the School District had substantially complied with the second prong of the *Rowley* test, and that plaintiff had failed to prove that S.D.'s IEP was not reasonably calculated to enable him to receive educational benefits.

Plaintiff asserts that despite the progress reports that S.D. had made sufficient progress in the area of toileting, his toileting skills actually worsened during the 2013-2014 school year. Plaintiff complains that the School District's documentation logs contained either no logs or logs which were not capable of precise measurement. Specifically, the toileting logs for the 2013-2014

---

[25] Id.
[26] Adm. R. pp. 1676-1677.
[27] Hendrick Hudson Central School District, Westchester County v. Rowley, 458 U.S. 176 (1982)(Although the IDEA has been amended multiple times since 1982, *Rowley* is still controlling. J.L. v. Mercer Island School District, 592 F.3d 938, 951 (9th Cir. 2010)).
[28] Decision and Order, R. #1-1, p. 18.

6

school do not show anything about S.D.'s toilet training, such as the number of attempts made by the School District to practice with S.D. on indicating the need to use the restroom, the number of S.D.'s successful or unsuccessful attempts, the percentage of accuracy, or any other indication of the School District's toileting efforts and/or S.D.'s progress towards his toileting goals and objectives.[29]

## STANDARD OF REVIEW

United States Supreme Court precedent has established that the party who brings the IDEA due process hearing request and seeks relief at an administrative due process hearing bears the burden of persuasion.[30] Because S.D.'s parent brought the due process hearing request, the plaintiff/appellant here bears the burden of showing by a preponderance of the evidence that the plaintiff suffered a substantive denial of FAPE.[31]

When a district court reviews a state hearing officer's decision in an impartial due process hearing under the IDEA, it must receive the record of the administrative proceedings and is then required to take additional evidence at the request of any party.[32] It must accord "due weight" to the hearing officer's findings,[33] but "must ultimately reach an independent decision based on a preponderance of the evidence."[34] Thus, the district court's review is "virtually de novo."[35] Even though the mixed question of fact and law is reviewed *de novo,* the underlying fact-findings,

---

[29] Adm. R. pp. 846-855.
[30] See Schaffer v. Weast, 546 U.S. 49, 62, 126 S.CT. 528, 537 (2005).
[31] Cypress-Fairbanks Indep. Sch. Dist. V. Michael F., 118 F.3d 245, 247-48 (5th Cir. 1997).
[32] 20 U.S.C. § 1415(e)(2).
[33] See Rowley, 458 U.S. at 206, 102 S.Ct. 3034.
[34] Cypress-Fairbanks, 118 F.3d at 252.
[35] Id.

"such as findings that a disabled student obtained educational benefits under an IEP, are reviewed for clear error."[36] A party attacking the appropriateness of an IEP established by a local educational agency bears the burden of showing why the IEP and resulting placements were inappropriate under the IDEA.[37]

## LAW AND ANALYSIS

The Individuals with Disabilities Education Improvement Act ("IDEA") requires states that receive federal financial assistance under the act to ensure that each student with a disability in the state between the ages of three (3) and twenty-one has available to him/her the opportunity to receive a free appropriate public education (hereinafter referred to as FAPE) defined as:

> Special education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State education agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and (D) are provided in conformity with the *individualized education program* required under section 1414(d) of this title.[38]

Under the IDEA, participating school districts are civilly liable if they do not ensure that FAPE "is available to all children with disabilities...."[39] "The term [FAPE] means special education and related services that . . . are provided in conformity with the [IEP] required under section 1414(d) of this title."[40]

---

[36] Id.
[37] Id.
[38] 20 U.S.C. § 1401 (9) (emphasis added).
[39] 20 U.S.C. § § 1412(a)(1)(A), 1415(i)(2).
[40] 20 U.S.C. § 1401 (9)(D); Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 345 (5th Cir. 2000).

The term individualized education program ("IEP") is defined as

a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of this title and includes --

**(I)** a statement of the child's present levels of academic achievement and functional performance, including –

    (aa) how the child's disability affects the child's involvement and progress in the general education curriculum; ...

    (cc) for children with disabilities who take alternate assessments aligned to alternate achievement standards, a description of benchmarks or short-term objectives;

**(II)** a statement of measurable annual goals, including academic and functional goals, designed to—

(aa) meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and

(bb) meet each of the child's other educational needs that result from the child's disability;

**(III)** a description of how the child's progress toward meeting the annual goals described in subclause (II) will be measured and when periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided;

**(IV)** a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child—

    **(aa)** to advance appropriately toward attaining the annual goals;

    **(bb)** to be involved in and make progress in the general education curriculum in accordance with subclause (I) and to participate in extracurricular and other nonacademic activities; and

    **(cc)** to be educated and participate with other children with disabilities and nondisabled children in the activities described in this subparagraph;...

9

(V)     (aa)     a statement of any individual appropriate accommodations that are necessary to measure the academic achievement and functional performance of the child on State and districtwide assessments consistent with section 1412(a)(16)(A) of this title;. . .

(VII)     the projected date for the beginning of the services and modification described in subclause (IV), and the anticipated frequency, location, and duration of those services and modifications; ....[41]

The IDEA does not require that the child with a disability be provided "the best possible education at public expense."[42] The special education and related services provided to the child need not "maximize each child's potential"; rather, it must be "sufficient to confer some educational benefit upon the handicapped child".[43] Indeed, the Fifth Circuit has stated that the child need not progress in every area to have received FAPE from the school system.[44] In other words, the IDEA guarantees only a "basic floor of opportunity" for every disabled child, consisting of "specialized instruction and related services which are individually designed to provide educational benefit."[45]

The United States Supreme Court has articulated a two-prong test: (1) whether the school district complied with the procedural requirements of the IDEA; and (2) whether the IEP is "reasonably calculated to enable the child to receive educational benefits."[46] The Fifth Circuit

---

[41] 20 U.S. C. A. § 1414(d).
[42] Fort Zumwalt Sch. Dist. V. Clynes, 119 F.3d 607, 612 (8th Cir. 1997).
[43] Bd. Of Educ. Of Rowley, 458 U.S. 176, 198,102 S. Ct. 3034 (1982).
[44] See Houston Indep. Sch.Dist.v. Bobby R., 200 F.3d 341, 349-50 (5th Cir. 2000).
[45] Cypress-Fairbanks Indep. Sch.Dist. v. Michael F., 118 F,3d 245, 247-48 (5th Cir. 1997).
[46] B.B. v. Catahoula Parish Sch. Dist., 2013 WL 5524976 at *7 (W.D. La. Oct. 3, 2013) see Bd. Of Educ. Of Hendrick Hudson Cent. Sch. Dist.,Westchester Cnty. v. Rowley, 458 U.S. 176, 205-06 (1982).

requires a parent to show that (1) a procedural violation of the IDEA produced substantive harm, or (2) the student's IEPs were not reasonably calculated to provide an educational benefit.[47]

School Districts are required to review and revise IEPs annually "to determine whether the annual goals for the child are being achieved: and revise "the IEP, as appropriate, to address...[a]ny lack of expected progress toward the annual goals..."[48]

*Procedural Requirements*

The ALJ concluded that plaintiff failed to prove procedural violations of IDEA. Thus, she failed to prove that FAPE was denied. Plaintiff disagrees. Plaintiff complains that the School District's use of the Applied Behavior Analysis ("ABA") was deficient because of (1) the lack of proper recording of observations of the PECS system,[49] and (2) because of the lack of licenses, certification and/or training in ABA by the school personnel responsible for implementing the PECS.[50]

> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies – (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits.[51]

---

[47] Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist., 328 F.3d 804,812-13 (5th Cir. 2003).
[48] 34 C.F.R. § 300.324(b)(1)(ii).
[49] The PECS systems is an intervention plan; the goal is to help the student make progress towards their IEP goals and objectives by the School District constantly cycling through the process of "watching, recording, tweaking and revising." Adm R. p. 1273.
[50] Three School District personnel were responsible – the special education teacher, Mr. Jeansonne, and two paraprofessionals, St. Romain and Smoot. The School District hired a "board certified behavioral analyst, Ms. Brocato to monitor the intervention process. Plaintiff complains that Brocato's supervision was inadequate.
[51] See 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(b).

11

Plaintiff complains that the School District deprived her of a meaningful opportunity to participate in Minor's IEP by failing to provide her with measurable progress reports and short-term objectives, and by failing to maintain adequate documentation of S.D.'s progress towards his IEP goals and objectives, and the efforts made by IEP team personnel to assist S.D. in achieving his goals and objectives.

The ALJ found and the administrative record reveals that an IEP meeting was held after plaintiff was properly notified; plaintiff participated in the meeting via telephone. The relevant IEPs delineated measurable short-term objectives or benchmarks in every area of concern. Furthermore, plaintiff was notified daily of S.D.'s progress as well as receiving progress reports during the school year. The ALJ further noted that prior to plaintiff filing the due process complaint, she had not asked for any documentation logs. The ALJ concluded that plaintiff had failed to prove that the alleged procedural violations impeded S.D.'s right to a FAPE, significantly impeded her opportunity to participate in the decision-making process regarding the provision of a FAPE, or caused any deprivation of educational benefit.

The ALJ remarked that even though the toileting logs did not contain enough information to determine if S.D. was meeting his goals, the School District remedied the shortcomings by amending the documentation logs to include additional information designed to determine if S.D. was achieving his set goals.

Plaintiff complains that because the School District chose the ABA approach or strategies to implement S.D.'s toileting goals, the School District had an obligation to insure that its

employees applied ABA methods, and that they were properly trained, supervised and certified to do so. Plaintiff seems to be positing that each of the three School District employees who were responsible for implementing the PECS system as to S.D.'s toileting goals must have been ABA certified or that it was not enough to have one employee, Ms. Brocato, a board certified behavioral analyst hired as a consultant, to assist with the program. We find plaintiff's argument lacks merit and agree with the ALJ's conclusion that the plaintiff did not prove that the alleged procedural violations resulted in a loss of an educational opportunity.

*Substantive Requirements*

As to substantive requirements, the court must determine if S.D.'s IEPs for the 2013-2014 school year were reasonably calculated to enable S.D. to receive educational benefits.[52] There are four factors to consider that serve as an indication of whether an IEP is reasonably calculated to provide a meaningful benefit under the IDEA:

> (1) The program is individualized on the basis of the student's assessment and performance;
>
> (2) The program is administered in the least restrictive environment;[53]
>
> (3) The services are provided in a coordinated and collaborative manner by the key "stakeholders;" and
>
> (4) Positive academic and non-academic benefits are demonstrated.[54]

---

[52] Rowley, 458 U.S. at 206-07, 102 S.Ct. 3034.
[53] Plaintiff did not address this factor; therefore, neither will the court.
[54] Michael F. 118 F.3d at 253..

13

IDEA does not require a school district to maximize a disabled child's potential,[55] but it does require "that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child."[56]

The School District maintains that plaintiff did not meet her burden to show that the 2013 IEP and 2014 IEP were not appropriately individualized to address S.D.'s unique educational needs.[57] Plaintiff maintains that because the IEPs were "substantially similar," this indicates that the School District made no effort to individualize S.D.'s IEPs to his needs.[58] Plaintiff relies on the Richardson case which ultimately held that is was not error for the lower courts to find that the substantially similar and consecutive IEP's were not calculated to provide an educational benefit. However, in Richardson, the facts were remarkably distinguishable from the instant matter. The record in that case revealed that the measures contained in the IEPs to address certain classroom and destructive conduct were entirely insufficient to resolve the problem because they had repeatedly failed in the past and in fact, the student had shown a "consistent pattern of regress" and the record was "quite sparse regarding meaningful progress either academically or non-academically" during the school year.[59]

The School District remarks that it is undisputed that the record reveals that S.D.'s IEP Team reviewed the assessments and evaluations as well as input from plaintiff and other IEP

---

[55] Rowley, 458 U.S. at 198.
[56] Id. at 200, 102 S.Ct. 3034.
[57] Adm. R. p. 1341.
[58] Citing Richardson Indep. Sch. Dist. V. Michael Z, 580 F.3d 286, 294-95 (5th Cir. 2009)( when a student's failure to progress is coupled with substantially similar and consecutive IEPs, the courts may find that the IEP is not calculated to provide an educational benefit).
[59] Id. 580 F.3d at 294.

14

Team members, and developed specific accommodations, services, and strategies that were valid and appropriate to address S.D.'s individual needs. The record shows that although S.D. showed no improvement in the area of toileting, he did make progress in all other areas.

Plaintiff maintains that the School District did not provide services to S.D. in a coordinated and collaborative manner. When a school district fails to insure proper coordination and collaboration among its employees and between its employees and the parent, such a failure to coordinate and collaborate can constitute a denial of FAPE to the student.[60] In assessing this factor, courts have considered issues, such as inadequate training, lack of communication, confusion, and hostility between the parties.[61]

Plaintiff complains that Jeansonne, St. Romain and Smoot, who were responsible for implementing S.D.'s toileting goals and objectives did not have the proper license, certification or training in the ABA which she alleges establishes a denial of FAPE to the student.

Plaintiff further complains that the consultant, Brocato, hired by the School District to oversee the development and implementation of ABA methods, was unable to provide direct supervision over the daily ABA interventions applied to S.D. during the 2013-2014 school year. Plaintiff remarks that the Director of Special Education was confused about the phrase "use the restroom" and that Jeansonne, the Special Education teacher was not aware that the ABA was being utilized for S.D., he did not personally implement the ABA methods, he was confused about the annual goal and S.D.'s short-term objectives, and he did not use the 2013-2014 logs to measure S.D's progress towards his goal and objectives. Plaintiff also complains that there was

---

[60] See, e.g., Houston Indep. Sch. Dist. v. V.P. ex rel Juan P., 582 F.3d 576, 587 (5th Cir. 2009).
[61] See Juan P., 582 F.3d at 587-88.

confusion as to who was supposed to calculate trials and errors to measure S.D.'s goals. Plaintiff remarks that St. Romain and Smoot did not see S.D.'s 2014 IEP or his goals during the 2013-2014 school year, and they did not use the PECS system when toilet training S.D.

The School District first submits that this issue is waived because plaintiff did not raise the issue of its services as not being provided in a coordinated and collaborative manner during the due process hearing. Even so, the School District submits that plaintiff has failed to meet her burden of proving this allegation citing Corpus Christi Indep. Sch. Dist. v. C.C.,[62] which held that to "demonstrate a lack of coordination in providing a student with services, a plaintiff must 'show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." The School District further relies on the ALJ's finding that the various stakeholders developed and implemented S.D.'s IEPs.

Specifically, the School District developed S.D.'s 2014 IEPs with the participation of various individuals, including S.D., plaintiff, S.D.'s Special Education Teacher, his Adapted PE Teacher, the Regular Education teacher, the school nurse and the speech/language pathologist. Even though S.D.'s Special Education Paraprofessional 1 and 2 did not participate in the development of the IEPs, they both testified that the Special Education Teacher, Jeansonne and other School Board personnel instructed them on what services to provide S.D. and how to

---

[62] 2012 WL 2064846 at *7 (S.D. Tex. 2012)(quoting Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir. 2000)).

document them. Jeansonne also testified as to how he implemented S.D.'s IEP and the various services provided to S.D. The ALJ noted in her opinion that even though the School's documentation log for toileting did not contain enough information to show if S.D. was meeting his goals, the School had implemented new logs for appropriately documenting Minor's progress in toileting which remedied any shortcomings.

Finally, plaintiff posits that the School District's failure to address S.D.'s toileting needs is a single weakness which can, by itself, constitute an actionable violation of the IDEA.[63] Plaintiff relies on a School District statement that "impairments [including toileting] continue to interfere with [S.D.'s] ability to benefit from his educational program and the potential for change in his educational functioning with therapeutic intervention is evident.:[64] The School District remarks that plaintiff ignores that according to the Occupational Therapy Reevaluation, S.D. has made progress or improved in the other six (6) instructional plan pages of the IEP such as reading, communication, handwriting, social, math and gross motor, all of which plaintiff admitted at the hearing that S.D. had made progress in.

In Klein Indep. Sch. Dist. v. Hovem,[65] the Fifth Circuit cautioned lower courts that it is "legal error in interpreting the 'educational benefit' afforded [the student] solely in terms of weaknesses caused by his learning disability rather than his overall academic record"[66] and "[n]owhere in Rowley is the educational benefit defined exclusively or even primarily in terms of

---

[63] S.F. v. McKinney Indep. Sch. Dist., 2012 WL 718589, at *11 (E.D. Tex. Mar. 6, 2012).
[64] Adm. R. 222. Occupational Therapy Reevaluation.
[65] 690 F.3d 390, 397 (5th Cir. 2012).
[66] Id.

17

correcting the child's disability."[67] "[T]he whole educational experience, and its adaptation to confer "benefits" on the child, is the ultimate statutory goal."[68]

The ALJ correctly cited jurisprudence which instructs us that it is not necessary for a student to improve in every area to obtain an educational benefit from his IEP, and IDEA does not entitle S.D. to a program that maximizes his potential.[69] As long as the School District has provided him with a "basic floor" of opportunity, specifically designed to meet his unique needs, supported by services that will permit him to benefit from the instruction, the School District has fulfilled its obligations under the law.[70] The court finds no error in the ALJ's finding that S.D. demonstrated positive academic and non-academic benefits, other than in toileting. We further find no error with regard to the ALJ's ruling that S.D.'s IEP allowed him to receive a FAPE, notwithstanding the School District's insufficient documentation of S.D.'s progress in the area of toileting.

## CONCLUSION

For the reasons set forth above, the court finds that plaintiff has failed to meet her burden of proving that she was entitled to any relief based on a substantive or procedural violation of the IDEA. The court further finds that the School District did not deny S.D. a FAPE. Accordingly, the motion for summary judgment filed by plaintiff will be denied, and the motion for summary judgment filed by defendant will be granted dismissing the instant complaint with prejudice.

---

[67] Hovem, 690 F.3d at 397.
[68] Id.
[69] See D.B. v. Houston Indep. Sch. Dist. 2007 WL 2947443, at *12 (S.D. Tex. Sept. 29, 2007; B.B. Catahoula Parish Sch. Dist. 2013 WL 5524976, at *12 (W.D. La. Oct. 3, 2013).
[70] See Richardson Indep. Sch. Dist.v. Michael Z., 580 F.3d 286, 292 (5th Cir. 2009).

18

**THUS DONE AND SIGNED** in chambers on this $\underline{16^{th}}$ day of December, 2015.

*/s/ James Trimble*

JUDGE JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE